## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Andre and Joyce Lambert, Jeff McBride, and Bethany Ball, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>LUMBER LIQUIDATORS HOLDINGS, INC.,<br><br>Defendant. | Case No. _1: 14 CV 35 GBL /TCB_<br><br>CLASS ACTION<br>JURY TRIAL DEMANDED<br><br> |

## CLASS ACTION COMPLAINT

Plaintiffs Andre and Joyce Lambert, Jeff McBride, and Bethany Ball (collectively, "Plaintiffs," unless otherwise specified), individually and on behalf of all others similarly situated (the "Class," as more fully defined below), allege the following against defendant Lumber Liquidators Holdings, Inc. ("Lumber Liquidators," the "Company," or "Defendant"), upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon, among other things, their attorneys' investigation.

### I. INTRODUCTION

1.      This is a proposed class action brought by Plaintiffs on behalf of themselves and the below-defined Class against Lumber Liquidators to obtain damages and injunctive relief arising from and relating to their purchase and installation of Lumber Liquidators' Chinese wood flooring materials ("Chinese Flooring").

2.      This action arises out of Lumber Liquidators' scheme to import into the United States, and to falsely warrant, advertise, and sell, Chinese Flooring that fails to comply with

relevant and applicable formaldehyde standards (discussed more further below) as well as its breaches of express and implied warranties with respect to these products.

3.      In particular, in contrast to its direct representations to the contrary, Lumber Liquidators manufactures, sells, and distributes Chinese Flooring that emits and off-gasses excessive levels of formaldehyde, which is categorized as a known human carcinogen by the United States National Toxicology Program and the International Agency for Research on Cancer.

4.      Indeed, contrary to Lumber Liquidators' repeated, detailed representations that its flooring complies with strict formaldehyde standards on its product labels, website, and elsewhere, the toxic formaldehyde emissions from the Company's Chinese Flooring products are multiple times the maximum permissible limits set by those standards at the time of purchase.

5.      Defendant's illegal behavior with respect to its manufacturing, marketing, and sale of Chinese Flooring has caused Plaintiffs and the other Class members to suffer direct financial harm.   Plaintiffs' purchases, by failing to comply with the plain warranties of the Chinese Flooring, is markedly less valuable because of its elevated level of formaldehyde. Plaintiffs would have paid significantly less, if they purchased Chinese Flooring at all, had they known that the products were sourced from endangered habitats and contained elevated levels of the toxin formaldehyde.

6.      Plaintiffs assert claims individually and on behalf of the other members of the proposed Class for breach of express and implied warranty; violation of state Consumer Protection/Deceptive Practices acts; and unjust enrichment arising from Defendant's scheme to import and sell the Chinese Flooring products at issue here.

2

## II. JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a case in which Plaintiffs and the other Class members, on the one hand, and Lumber Liquidators, on the other, are citizens of different states. This Court also has jurisdiction over the action pursuant to 18 U.S.C. § 1964 (RICO).

8.      This Court has jurisdiction over Lumber Liquidators because the Company maintains its principal headquarters in Virginia, is registered to conduct business in Virginia, and has sufficient minimum contacts in Virginia. Lumber Liquidators intentionally avails itself of the Virginia consumer market through the promotion, sale, marketing, and distribution of its products to Virginia residents. As a result, jurisdiction in this Court is proper and necessary. Moreover, Lumber Liquidators' wrongful conduct, as described herein, emanates from Virginia and foreseeably affects consumers in Virginia and nationwide. Most, if not all, of the events and decisions complained of below occurred in or emanated from Lumber Liquidators' corporate headquarters located in Virginia.

9.      Venue is proper in this District under 28 U.S.C. § 1391 (a)-(d) because, among other things, substantial parts of the events or omissions giving rise to the claim occurred in the District and/or a substantial part of property that is the subject of the action is situated in the District.

### III. PARTIES

**A.   PLAINTIFFS**

10.     Andre and Joyce Lambert are, and at all relevant times have been, residents and citizens of Alabama.  In or about May 2013, the Lamberts purchased Morningstar Bamboo brand flooring directly from Defendant, which was installed in their home.  This flooring was manufactured in China.  At the time of purchase, Lumber Liquidators falsely represented and warranted the flooring to be compliant with strict formaldehyde standards.  The Lamberts relied on Lumber Liquidators' misrepresentations regarding its compliance with U.S. laws and regulations when deciding to purchase flooring and, as a result, paid more for this product than they would have and/or would not have purchased the product but for Defendant's deceptive conduct.

11.     Jeff McBride is, and at all relevant times has been, a resident and citizen of Virginia.  In or about February 2012, McBride purchased Morningstar Bamboo flooring directly from Defendant, which was installed in his home.  In or about January 2013, McBride purchased more Morningstar Bamboo flooring directly from Defendant, which was installed in his home. This flooring was manufactured in China.  At the time of each purchase, Lumber Liquidators falsely represented and warranted the flooring to be compliant with strict formaldehyde standards, as well as that the flooring was manufactured in compliance with the Lacey Act. McBride relied on Lumber Liquidators' misrepresentations regarding its compliance with U.S. laws and regulations when deciding to purchase flooring and, as a result, paid more for this product than he would have and/or would not have purchased the product but for Defendant's deceptive conduct.

4

12.     Bethany Ball is and at all relevant times has been a resident and citizen of New York.  In or about February 2013, Ball purchased Morningstar Bamboo brand flooring directly from Defendant, which was installed in her home.  At the time of this purchase, Lumber Liquidators falsely represented and warranted the flooring to be compliant with strict formaldehyde standards, as well as manufactured in compliance with the Lacey Act.  Ball relied on Lumber Liquidators' misrepresentations regarding its compliance with U.S. laws and regulations when deciding to purchase flooring and, as a result, paid more for this product than she would have and/or would not have purchased the product but for Defendant's deceptive conduct.

**B.     DEFENDANT**

13.     Lumber Liquidators Holding, Inc. is a Delaware corporation with its principal executive offices located at 3000 John Deere Road, Toano, Virginia 23168.

14.     Lumber Liquidators is one of the largest specialty retailers of hardwood flooring in the United States selling primarily to homeowners directly or to contractors acting on behalf of homeowners through its extensive network of retail stores in nationwide.

15.     Lumber Liquidators has mills in, and buys many of its source wood flooring material from, China.  The Company recently established a representative office in Shanghai, China and assumed "direct control" of all of its product sourcing in China (through its headquarters in China).

## IV. FACTUAL BACKGROUND

16.     Lumber Liquidators was created in Massachusetts in 1993 by Tom Sullivan. The Company's first store opened in 1996 in West Roxbury, Massachusetts.  Eight months later, a

second store opened in Hartford, Connecticut, and from there the Company expanded exponentially.

17.     The Company moved headquarters from Boston to Colonial Heights, Virginia in 1999. In 2004, the Company moved its headquarters to its current location in Toano, Virginia.

18.     Lumber Liquidators carries solid and engineered hardwood, laminate flooring, bamboo flooring, cork flooring and resilient vinyl flooring, butcher blocks, molding, accessories, and tools.

19.     Lumber Liquidators represents that it negotiates directly with the lumber mills, eliminating the middleman and passing the savings on to its customers.  The Company also represents and warrants that it is "environmentally conscientious" and "only purchases from suppliers who practice sustainable harvesting, which allows forests to heal and re-grow faster."

20.     In 2012, Lumber Liquidators had revenue of over $800 million.

A.     **FORMALDEHYDE**

21.     Contrary to its representations to Plaintiffs and the other Class members, Lumber Liquidators has knowingly and intentionally engaged in a scheme to source, manufacture, sell, and distribute falsely advertised Chinese Flooring that emits excessively high levels of formaldehyde.

22.     Formaldehyde ($CH_2O$) is a naturally occurring chemical that can be synthesized and used in certain industrial processes.

23.     Formaldehyde is classified as a volatile organic compound ("VOC"), which is a chemical that becomes a gas at room temperature.  It is listed as a known human carcinogen by the National Toxicology Program and the International Agency for Research on Cancer and is

associated with myriad other adverse medical conditions even in short term exposure, including asthma and rheumatoid arthritis.

24.     According to the U.S. Occupational Safety & Health Administration ("OSHA"):

[t]he concentration of formaldehyde that is immediately dangerous to life and health is 100 ppm.  Concentrations above 50 ppm can cause severe pulmonary reactions within minutes.  These include pulmonary edema, pneumonia, and bronchial irritation which can result in death.  Concentrations above 5 ppm readily cause lower airway irritation characterized by cough, chest tightness and wheezing.

Long term exposure has been linked to an increased risk of cancer of the nose and accessory sinuses, nasopharyngeal and oropharyngeal cancer, and lung cancer in humans.[1]

25.     Formaldehyde has a pungent odor and irritates the respiratory tract.  The most common symptoms of formaldehyde exposure are burning eyes, nose and throat irritation, coughing, headaches, dizziness, joint pain, and nausea.  Due to the harmful effects of formaldehyde on human health, various laws have been enacted to reduce consumers' exposure to this toxin.

26.     Wood flooring can contain formaldehyde because formaldehyde is often used in the adhesives and resins used to make engineered wood floors.  Formaldehyde can be released into the air (through a process called "off-gassing") from wood flooring materials.

27.     According to the Consumer Product Safety Commission ("CPSC"), pressed-wood (i.e., hardwood plywood, particleboard, and medium-density fiberboard ("MDF")) and wood-based products, especially those containing urea-formaldehyde (or "UF") resins, may be "a significant formaldehyde source."

---

[1] https://www.osha.gov/pls/oshaweb/owadisp.show_document?p_table=standards&p_id=10078

28.     Many, if not all, of Lumber Liquidators' Chinese Flooring products contain UF/urea-formaldehyde or other formaldehyde resins.  For example, the Material Safety Data Sheet for Lumber Liquidators' Morning Star Bamboo Flooring states:  "This product is composed of bamboo fibers bonded together with urea formaldehyde (UF) resins."  UF makes up 10-11% of the product.

29.     Chinese-sourced wood products (including Lumber Liquidators' Chinese Flooring) are particularly associated with excess formaldehyde levels.

30.     One study, entitled "Formaldehyde in China: Production, consumption, exposure levels, and health effects," *Environment International* 35 (2009) 1210–1224, found that over the last 20 years, China's formaldehyde industry has experienced unprecedented growth, and now produces and consumes *one-third* of the world's formaldehyde.  More than 65% of the Chinese formaldehyde output is used to produce resins which are mainly found in wood products.  These are also the major source of indoor air pollution in China.  The study documented numerous instances of hazardous occupational exposure to formaldehyde in Chinese wood workers.

31.     Chinese regulations governing formaldehyde in wood products are virtually non-existent.  As a result, wood sourced from China is not subject to the strict environmental regulations that would govern such wood products manufactured in the United States.

32.     The United States statute that governs permissible formaldehyde emissions, the Formaldehyde Standards for Composite Wood Products Act of 2010, 15 U.S.C. 2697 (the "Formaldehyde Standards Act"), was signed into law on July 7, 2010.  The Formaldehyde Standards Act adopted the standards established by CARB as a nationwide standard.  The comment period for the two proposed regulations that will implement the Formaldehyde Standards Act recently concluded and the implementation of these standards is forthcoming.

33.     Lumber Liquidators' marketing materials, including the Company's website, specifically represent to consumers that the Company's Chinese Flooring products comply with the formaldehyde emission regulations propounded by CARB and, indeed, comply with even stricter European Union ("EU") formaldehyde standards:

> *All laminates and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards.* The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified formaldehyde emission limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified.

> Though it currently applies only to products sold in California, *Lumber Liquidators made a decision to require all of our suppliers to comply with CARB regardless of whether we intended to sell the products in California or any other state/country. In addition, our suppliers manufacture their products in accordance with the European standard which has stricter guidelines than the California* [sic].

> In addition to the CARB requirements, *Lumber Liquidators regularly selects one or more products from each of its suppliers and submits them for independent third-party lab testing.* This is done as a monitoring activity to validate ongoing compliance.[2]

34.     Moreover, Lumber Liquidators' Purchase Order Terms and Conditions, which are readily available on the Company's website, provide the following warranties:

> SELLER'S WARRANTIES: *Seller expressly warrants that all goods covered by this Purchase Order will: (a) strictly conform to Seller's specifications, drawings, samples and other written materials and descriptions* . . . .

> *In addition, Seller warrants that: (e) none of the goods covered hereby, to the extent they are subject to laws prohibiting adulteration or misbranding, is adulterated or misbranded within the meaning of such laws as of the date of*

---

[2] http://www.lumberliquidators.com/ll/flooring/Flooring101-formaldehyde-what-is-it.

*delivery to Lumber Liquidators; (f) all goods covered hereby may be introduced into the stream of commerce without violation of applicable laws and regulations; and (g) all goods furnished or supplied pursuant to this Purchase Order have been sourced, produced, sold, delivered, declared, packaged, labeled, manufactured, and/or rendered to Lumber Liquidators in compliance with all applicable laws, codes and regulations.*[3]

35.    This warranty applies to all Lumber Liquidators products.

36.    In addition, each of Lumber Liquidators' products is covered by a warranty stating that the flooring will be free from defects.  For example, the Mayflower Engineered Limited Warranty states that: *"Mayflower engineered prefinished hardwood floors are crafted to meet the industry's highest quality standards and are carefully manufactured to ensure they are free of defects.  Each board is meticulously inspected before and after the finishing process to make sure it complies with Mayflower's unwavering standards."*  Each of the warranties at issue here contains the same, or substantially similar, statements representing that the products are "free of defects."

37.    Contrary to Lumber Liquidators' repeated, detailed representations and warranties, however, its Chinese Flooring products off-gas formaldehyde at the time of purchase at levels that far exceed the standards propounded by CARB and the EU resulting in harm to Plaintiffs and the other Class members who purchased these products.

38.    The truth regarding Lumber Liquidators' flooring began to emerge on June 20, 2013, when blogger Xuhua Zhou ("Zhou") of the website *Seeking Alpha* first published the results of his independent investigation of the formaldehyde levels present in Lumber Liquidators' flooring.

---

[3]  http://www.lumberliquidators.com/ll/customer-care/potc800201.

39.     Mr. Zhou sent off samples of Lumber Liquidators' Chinese Flooring to be tested.[4]

Two separate and independent accredited testing laboratories confirmed that the Chinese

Flooring manufactured, distributed, and sold by Lumber Liquidators emitted and off-gassed

formaldehyde at levels *far exceeding* the CARB (and EU) formaldehyde limits.

40.     As Zhou explained:

> I recently conducted independent lab testing - engaging Berkeley Analytical, an
> IAS accredited testing laboratory - on a sample of Lumber Liquidators house
> brand flooring ("Mayflower" brand), and the results that came back weren't
> pretty: *Over 3.5x the maximum legal level for formaldehyde.* (This product was
> purchased retail from a Southern California retail store.) Fully understanding the
> importance of this finding, we submitted samples from the same package to a
> second laboratory, this one the "gold standard" lab for the National Wood
> Flooring Association, NTA. *This second lab confirms the product is in violation
> of the legal limit for formaldehyde.*
>
>                         * * * * *
>
> The tested product, Mayflower 5/16" x 5" Bund Birch Engineered, emits a
> staggering three and half times over the government mandated maximum
> emission level. The product is clearly not CARB compliant yet Lumber
> Liquidators tagged CARB compliance on the box.

41.     Rather than respond to or acknowledge the testing results, Lumber Liquidators

initiated a clearance sale to offload its existing inventories on consumers.  As Zhou explained in

a follow-up article dated June 24, 2013:

> Despite having offered to send the company my noncompliant sample and the
> relevant lab reports, I have yet to correspond with anyone from Lumber
> Liquidators. Instead, *Lumber Liquidators initiated an End of Quarter
> CLEARANCE sale for all its flooring products per a marketing email received
> this Sunday. The company chose not to follow up on credible questions raised
> about its product safety and instead launched a marketing sales campaign to get
> rid of existing inventory faster.*  It could be that Lumber Liquidators management
> needs to make analyst projections for the second quarter or it may be trying to
> unload all noncompliant inventories before the California Air Resource Board

---

[4] Zhou disclosed that he held short positions in the Company's stock at the time of his report.

starts to crack down on the issue. Regardless of the rationale, it is hardly a responsible decision on the part of Lumber Liquidators.[5]

42.     Zhou also preserved his Chinese Flooring and directly asked Lumber Liquidators to contact him and conduct its own testing. Although the Company was undoubtedly aware of his request given the widespread publicity his report received, Lumber Liquidators never followed up with him to request his results.

43.     Unsurprisingly, Consumer Affairs, a leading consumer news and advocacy organization, gives Lumber Liquidators an "Overall Satisfaction Rating" of just one out of five stars, based on nearly eighty customer reviews.[6]  In fact, *not a single consumer* rated the Company with either 5 or 4 stars, and *89% percent* of respondents allotted Lumber Liquidators a single star, the lowest possible rating.

44.     Lumber Liquidators continues to misrepresent that its Chinese Flooring products were CARB and EU compliant when it knew that this was false, downplayed the formaldehyde off-gassing defect of its Chinese wood products, and failed to properly investigate and inform customers regarding the formaldehyde emissions problems associated with its products.

45.     Further, Lumber Liquidators, along with co-conspirators discussed *infra*, continues its illegal scheme to purchase from Chinese manufacturers and import into the United States cheap, non-compliant flooring and falsely advertise that the flooring complies with state, federal, and international standards.

---

[5] Xuhua Zhou, *Lumber Liquidators – Management's Silence and Broker's Rebuttal May Validate Worst Fear,* Seeking Alpha, available at http://seekingalpha.com/article/1517322-lumber-liquidators-managements-silence-and-brokers-rebuttal-may-validate-the-worst-fear

[6] http://www.consumeraffairs.com/homeowners/lumber_liquidators.html

46.     Had Defendant adequately and fairly represented its products, Plaintiffs and the other Class members would not have purchased these products and/or would have paid less money for them.

47.     Lumber Liquidators' flagrant violations of law and systemic warranty breaches have caused, and will continue to cause, significant financial harm to Plaintiffs and the other Class members.

## V. CLASS ACTION ALLEGATIONS

48.     Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all others similarly situated.

49.     The Class that Plaintiffs seek to represent are defined as:

All persons and entities in Virginia, New York and Alabama who purchased and installed wood flooring from Lumber Liquidators Holdings, Inc., either directly or through an agent, that was sourced, processed, or manufactured in China.

Excluded from the Class is Lumber Liquidators, its affiliates, employees, officers and directors, persons or entities that distribute or sell Lumber Liquidators flooring, the Judge(s) assigned to this case and the attorneys of record in this case.

50.     Plaintiffs do not assert claims in this action for personal injuries caused by formaldehyde exposure through the Chinese Flooring in question here.   Rather, Plaintiffs, individually and on behalf of the other Class members, seek solely economic and injunctive relief as a result of their purchase of Lumber Liquidators' Chinese Flooring products.

51.     The members of the Class are so numerous that joinder of all members would be impracticable. The proposed Class likely includes not less than tens of thousands of members dispersed across the United States. The precise numbers of members can be ascertained through

discovery, which will include records of Lumber Liquidators' sales, its warranty service, and other records and documents.

52.     There are common questions of law and fact that predominate over any questions affecting only individual Class members. These common legal and factual questions, include, but are not limited to:

a.      Whether Lumber Liquidators' Chinese Flooring products emit excessive levels of formaldehyde;

b.      Whether Lumber Liquidators represented and warranted that its Chinese Flooring products complied with their label descriptions;

c.      Whether Lumber Liquidators omitted and concealed material facts from its communications and disclosures to Plaintiffs and the other Class members regarding the illegal sourcing of its Chinese Flooring products;

d.      Whether Lumber Liquidators breached its express or implied warranties to Plaintiffs and the other Class members with respect to its Chinese Flooring products;

e.      Whether, as a result of Lumber Liquidators' conduct, Plaintiffs and the other Class members have suffered damages; and if so, the appropriate measure of damages to which they are entitled; and

f.      Whether, as a result of Lumber Liquidators' misconduct, Plaintiffs and the other Class members are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

53.     Plaintiffs' claims are typical of the claims of the other Class members. Plaintiffs and each of the other Class members have been injured by the same wrongful practices of Lumber Liquidators. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the other Class members' claims and are based on the same legal theories.

54.     Plaintiffs will fully and adequately assert and protect the interests of the other Class members. In addition, Plaintiffs have retained class counsel who are experienced and

qualified in prosecuting class action cases similar to this one. Neither Plaintiffs nor their attorneys have any interests contrary to or conflicting with other Class members' interests.

55.    A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the other Class members' claims is economically infeasible and procedurally impracticable. While the damages sustained by Class members in the aggregate are substantial, the individual damages incurred by each Class member are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Further, individual Class members do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and the court system because of multiple trials of the same factual and legal issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

56.    In addition, Lumber Liquidators has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the Class members as a whole is appropriate.

57.    Plaintiffs do not anticipate any difficulty in the management of this litigation. Any manageability concerns can be adequately addressed through various means available to the Court.

58.     Lumber Liquidators has, or has access to, address and other contact information for the Class members, which may be used for the purpose of providing notice of the pendency of this action.

## VI. CLAIMS ALLEGED

### COUNT 1
### (Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* - Formaldehyde)

59.     Plaintiffs incorporate by reference preceding paragraphs numbered as if fully set forth herein.

60.     Plaintiffs bring this claim individually and on behalf of the other Class members against Lumber Liquidators.

61.     Plaintiffs and the other Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

62.     Lumber Liquidators is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

63.     Lumber Liquidators flooring purchased separate from the initial construction of the structure constitutes a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

64.     Lumber Liquidators' express warranties and written affirmations of fact regarding the nature of the flooring, including that the flooring was free from defects and was in compliance with CARB and EU formaldehyde standards and all other applicable laws and regulations, constitute written warranties within the meaning of 15 U.S.C. § 2301(6).

65.     Lumber Liquidators breached their warranties by:

   a.   Manufacturing, selling and/or distributing flooring that exceeds the CARB and EU formaldehyde standards;

16

      b.   Manufacturing, importing, selling and/or distributing flooring that fails to comply with all applicable laws and regulations; and

      c.   Refusing to honor the express warranty by refusing to properly repair or replace the defective flooring.

66.    Lumber Liquidators' breach of its express warranties deprived Plaintiffs and the other Class members of the benefits of their bargains.

67.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

68.    Plaintiffs, on behalf of themselves and the other Class members, have notified Defendant of its breach of written warranties and Defendant has failed to adequately cure those breaches. As a direct and proximate result of Lumber Liquidators' breaches of its written warranties, Plaintiffs and the other Class members sustained damages in an amount to be determined at trial. Lumber Liquidators' conduct damaged Plaintiffs and the other Class members, who are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

## COUNT 2
### (For Breach of Express Warranty -- Formaldehyde)

69.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

70.    Plaintiffs bring this claim individually and on behalf of the other Class members against Lumber Liquidators.

71.    Lumber Liquidators warranted that its flooring was free of defects when it sold those products to Plaintiffs and the members of the Class as described in this Complaint.

Defendant further represented that its flooring products complied with CARB and EU formaldehyde standards and all applicable laws and regulations. Plaintiffs and members of the Class reasonably relied upon these representations.

72. Lumber Liquidators' warranties became part of the basis of the bargain.

73. Lumber Liquidators breached their warranties by:

   a. Manufacturing, selling and/or distributing flooring that exceeds the CARB and EU formaldehyde standards;

   b. Manufacturing, importing, selling and/or distributing flooring that fails to comply with all applicable laws and regulations; and

   c. Refusing to honor the express warranty by refusing to properly repair or replace the defective flooring.

74. Plaintiffs, on behalf of themselves and the other Class members, provided Lumber Liquidators with timely notice of its breach of warranty. Lumber Liquidators was also on notice regarding the excessively high levels of formaldehyde in its flooring from the complaints and requests for refund it received from Class members, Internet message boards and from published product reviews.

75. As a direct and proximate result of Lumber Liquidators' misconduct, Plaintiffs and the other Class members have suffered damages and continue to suffer damages, including economic damages at the point of sale. Additionally, Plaintiffs and the other Class members have either incurred or will incur economic damages at the point of repair in the form of the cost of repair and/or the cost of purchasing non-defective flooring to replace the Lumber Liquidators' flooring.

76. Plaintiffs and the other Class members are entitled to legal and equitable relief against Lumber Liquidators, including damages, consequential damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

## COUNT 3
## (For Breach of Implied Warranty of Merchantability)

77.     Plaintiffs incorporate by reference preceding paragraphs as if fully set forth herein.

78.     Plaintiffs bring this claim individually and on behalf of the other Class members against Lumber Liquidators.

79.     At all times relevant hereto, there was a duty imposed by law which requires that a manufacturer or seller's product be reasonably fit for the purposes for which such products are used and that the product be acceptable in trade for the product description.

80.     Defendant breached this duty by selling flooring to Plaintiffs and the other members of the Class that was not merchantable.

81.     Defendant was notified that its product was not merchantable within a reasonable time after the defect manifested itself to Plaintiffs and the members of the Class.

82.     As a result of the non-merchantability of Lumber Liquidators' flooring described herein, Plaintiffs and other members of the Class sustained a loss or damages.

## COUNT 4
## (Violation of Virginia Consumer Protection Act – Formaldehyde)

83.     Plaintiffs incorporate by reference preceding paragraphs as if fully set forth herein.

84.     Plaintiffs bring this claim individually and on behalf of the other Class members against Lumber Liquidators.

85.     Lumber Liquidators is a "supplier" within the meaning of the Virginia Consumer Protection Act (Va. Code. 59.1-198).

86. Lumber Liquidators engaged in "consumer transactions" with Plaintiffs and the other Class members within the meaning of the Virginia Consumer Protection Act (Va. Code 59.1-198).

87. Plaintiffs and the other Class members purchased flooring from Lumber Liquidators which constitutes "goods" within the meaning of the Virginia Consumer Protection Act (Va. Code 59.1-198).

88. Lumber Liquidators misrepresented and continues to misrepresent that its goods have or had certain characteristics, are or were of a particular standard, quality, or grade, and committed and continues to commit various other acts of deception, false pretense, false promise, or misrepresentations in connection with consumer transactions, including, among other things:

     a. Manufacturing, selling and/or distributing flooring that contains excessive levels of formaldehyde;

     b. Manufacturing, selling and/or distributing flooring that exceeds the CARB and EU formaldehyde standards despite the Company's repeated statements to the contrary;

     c. Manufacturing, importing, selling and/or distributing flooring that fails to comply with all applicable laws and regulations;

     d. Making false and misleading statements and omitting to disclose material information regarding defects in Lumber Liquidators' flooring, including but not limited to the levels of formaldehyde emissions and compliance with CARB and EU formaldehyde standards; and

     e. Refusing to properly repair or replace the defective flooring as described herein.

89. Defendant willfully engaged in deceptive and unfair acts and practices in that it knew or should have known that the methods, acts or practices alleged herein were deceptive, unfair, or unconscionable, or prohibited by law and failed to disclose material information

affecting the value of the Lumber Liquidators' Chinese Flooring products purchased by the Plaintiffs and the other Class members.

90.     As a direct and proximate result of Lumber Liquidators' unfair and deceptive trade practices, Plaintiffs and the other Class members were deceived into purchasing Lumber Liquidators' Chinese Flooring products and have been damaged thereby.

## COUNT 5
### (Violation of NY General Bus. L. §§ 349 et seq.)

91.     This is action is brought to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Lumber Liquidators on behalf of Plaintiff and the Class members.

92.     Plaintiff and Class Members are consumers and as owners of Defendants' products, they are the end users and intended beneficiaries of said products.

93.     As a seller of flooring products to the consuming public and whose conduct affects similarly situated consumers and has a broad impact on consumers at large, Defendant is engaged in consumer-oriented conduct within the intended ambit of GBL § 349.

94.     Defendant's actions and/or omissions as described herein violated GBL §349 et seq., which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

95.     Specifically, Defendant knowingly misrepresented and intentionally omitted material information affecting the value of the Lumber Liquidators' Chinese Flooring products

96.     Defendant's misrepresentations and concealment of material facts constitute

21

unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and use of Defendants' flooring in violation of GBL §349 et seq.

97.     Defendant violated GBL §349 by knowingly and falsely representing that Defendant's Chinese Flooring products were fit to be used for the purpose for which they were intended, when Defendants knew they were defective, unreliable, and unsafe and by other acts alleged herein.

98.     Defendant's deceptive and misleading actions and omissions as set forth herein have caused and continue to cause injury to Plaintiff and the Class Members.

99.     New York has enacted statutes to protect consumers from deceptive, fraudulent, and unconscionable trade and business practices such as those alleged in this Complaint.

100.     As a direct and proximate result of Defendant's violations of GBL §349, Plaintiff and the Class members have suffered and continue to suffer damages. Plaintiff and the Class Members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

## COUNT 6
### (Violation of Alabama Deceptive Trade Practices Act – Formaldehyde)

101.     Plaintiffs incorporate by reference preceding paragraphs as if fully set forth herein.

102.     Plaintiffs bring this claim individually and on behalf of the other Class members against Lumber Liquidators.

103.     Lumber Liquidators engaged in "sales" with Plaintiffs and the other Class members within the meaning of the Alabama Deceptive Practices Act (Ala. Code 8-19-3).

104.   Plaintiffs and the other Class members purchased flooring from Lumber Liquidators which constitutes "goods" within the meaning of the Alabama Deceptive Practices Act (Ala. Code 8-19-3).

105.   Lumber Liquidators misrepresented and continues to misrepresent that its goods have or had certain characteristics, are or were of a particular standard, quality, or grade, and committed and continues to commit various other acts of deception, false pretense, false promise, or misrepresentations in connection with consumer transactions, including, among other things:

      a. Manufacturing, selling and/or distributing flooring that contains excessive levels of formaldehyde;

      b. Manufacturing, selling and/or distributing flooring that exceeds the CARB and EU formaldehyde standards despite the Company's repeated statements to the contrary;

      c. Manufacturing, importing, selling and/or distributing flooring that fails to comply with all applicable laws and regulations;

      d. Making false and misleading statements and omitting to disclose material information regarding defects in Lumber Liquidators' flooring, including but not limited to the levels of formaldehyde emissions and compliance with CARB and EU formaldehyde standards; and

      e. Refusing to properly repair or replace the defective flooring as described herein.

106.   Defendant willfully engaged in deceptive and unfair acts and practices in that it knew or should have known that the methods, acts or practices alleged herein were deceptive, unfair, or unconscionable, or prohibited by law and failed to disclose material information affecting the value of the Lumber Liquidators' Chinese Flooring products purchased by the Plaintiffs and the other Class members.

107.   As a direct and proximate result of Lumber Liquidators' unfair and deceptive trade practices, Plaintiffs and the other Class members were deceived into purchasing Lumber Liquidators' Chinese Flooring products and have been damaged thereby.

## VII.  DAMAGES AND OTHER RELIEF

108.   Lumber Liquidators' acts and omissions were a proximate cause of the damages to Plaintiffs and the members of the Class.  Class Members have sustained financial losses associated with their purchase of Lumber Liquidators' flooring as they failed to obtain the benefit of their bargain, would not have purchased the products, and/or would have paid less for them if they had known the truth.  Other financial damages include installation and removal costs, remediation costs, restocking fees, loss of use, diminished value, and other losses.  At this time, Plaintiffs seek damages individually and on behalf of the other Class members and equitable relief as previously alleged in this Complaint.

109.   Plaintiffs, individually and on behalf of the other Class members, seek their reasonable and necessary attorneys' fees and costs incurred in connection with this suit.

110.   Plaintiffs, individually and on behalf of the other Class members, seek pre-judgment and post-judgment interest, at the highest rates allowed by law, on the damages awarded.

## VIII.  REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that the Court enter judgment in their favor as follows:

      a.  certifying the Class and appointing Plaintiffs and their counsel to represent the Class;

      b.  declaring that Lumber Liquidators is financially responsible for notifying all Class Members about the defects described herein;

c.  enjoining Lumber Liquidators from further deceptive sales practices with respect to the Company's flooring;

d.  awarding Plaintiffs and the other members of the Class their actual damages, consequential damages, specific performance, and/or rescission;

e.  directing Lumber Liquidators to repair and/or replace all defective and/or misbranded flooring at no cost to the Class members;

f.  awarding Plaintiffs and the other Class members pre-judgment and post-judgment interest;

g.  awarding Plaintiffs and the other Class members reasonable attorneys' fees and costs of suit, including expert witness fees;

h.  awarding Plaintiffs and the other Class members punitive damages, where authorized;

i.  granting leave to amend the Complaint to conform to the evidence produced through discovery and/or at trial; and

j.  awarding such other and further relief as this Court may deem just and proper.

## IX.  **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all claims so triable.

Dated:  January 14, 2014                    Respectfully submitted,

*Attorneys for Plaintiffs and the Proposed Class*
By Counsel

Bernard J. DiMuro
VSB No. 18784
*Attorneys for Plaintiffs and the Proposed Class*
**DIMUROGINSBERG, PC**
1101 King Street, Suite 610
Alexandria, Virginia  22314
Tel:  (703) 684-4333
Fax:  (703) 548-3181
bdimuro@dimuro.com

Jonathan Shub
**SEEGER WEISS LLP**
1515 Market St., Suite 1380
Philadelphia, PA 19102
Tel:  (215) 564-2300
Fax:  (215) 851-8029

Jeffrey A. Leon
Jamie E. Weiss
Grant Y. Lee
**COMPLEX LITIGATION GROUP LLC**
513 Central Ave
Highland Park, IL 60035
Tel:  (847) 433-4500
jeff@complexlitgroup.com

*Attorneys for Plaintiffs and the Proposed Class*