# **EXHIBIT 1**

# ELECTRONICALLY STORED INFORMATION PROTOCOL

**I.  DEFINITIONS**

    **A.** **"Electronically stored information"** or **"ESI,"** as used herein, means and refers to computer-generated information or data of any kind, stored in any media located on computers, file servers, disks, tape or other real or virtualized devices or media.  Non-limiting examples of ESI include:

- Digital communications (e.g., e-mail, voice mail, instant messaging, blog posts and /or communications over social media relevant to this litigation);
- E-Mail Server Stores (e.g., Lotus Domino, .NSF or Microsoft Exchange .EDB);
- Word processed documents (e.g., Word or WordPerfect files and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., .WAV and .MP3 files);
- Video and Animation (e.g., .AVI and .MOV files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Project Management Application Data;
- Computer Aided Design/Drawing Files;
- Backup and Archival Files (e.g., Veritas, Zip, .GHO); and
- Virtualized ESI, e.g., cloud-based or internet-based ESI.

The foregoing examples of "ESI" are provided without waiving the right to object to the production of a specific type of ESI in this case, including but not limited to objections for relevance, undue burden, inaccessibility, and/or that the ESI is reasonably available from another source.

B.  **"Documents"** shall have the same definition as set forth in Federal Rule of Civil Procedure 34.

C.  **"Native data format"** means and refers to the format of ESI in which such ESI was generated or used by the producing party in the usual course of business and in its regularly conducted activities.

D.  **"Metadata"** means (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage or validity of the electronic file or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

E.  **"Load/Unitization file"** means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file will also contain data relevant to the individual Documents, including extracted and user created Metadata, as well as OCR or Extracted Text, should such data be available.

F.  **"OCR File"** means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and

making such documents searchable using appropriate software.

      G.    **"Extracted Text"** means the text extracted from a Document, and includes all header, footer and document body information when available.

      H.    **"Media"** means an object or device, including but not limited to a disc, tape, computer or other device, whether or not in the producing party's physical possession, on which data is or was stored.

      I.    **"Parties"** means or refers to the named plaintiffs and defendant in the above-captioned matter, as well as any later added plaintiffs and defendants.

## II. EXCHANGE OF ESI DISCOVERY MATERIALS

Within 10 calendar days of this protocol being entered, the parties shall exchange the following information:

      a.    a list of the producing party's most likely custodians of relevant electronic materials, including each person's title and a brief description of such person's responsibilities (including dates of employment by the applicable producing party);

      b.    **Plaintiffs' Position**: a list and general description of each relevant electronic communication and/or ESI storage system(s) that are likely to contain relevant information, including the <u>dates of service</u> and formats employed in each system. **Lumber Liquidator's Position**: a list and general description of each relevant electronic communication and/or ESI storage system(s) that are likely to contain relevant information, including the formats employed in each system, but not including the dates of service; and

      c.    If a responding party contends that it has or may have any potentially responsive, non-duplicative ESI that is inaccessible or only of limited accessibility and, hence, not producible by that party, the responding party shall set forth:

4

    i.    the reason(s) why the information is considered inaccessible or of only limited accessibility;

    ii.    information sufficient to identify the type of back-up and disaster recovery media used and the number of backup tapes involved or, if applicable, the identity and version of applicab1e legacy software or systems, and when such software or systems achieved "legacy" status by the party.

### III.    SEARCH METHODOLOGY FOR ELECTRONIC DOCUMENTS

The parties agree that they will cooperate in good faith regarding the disclosure and formulation of appropriate search methodology for relevant evidence in advance of any ESI search as set forth herein. With the objective of an efficient review and production process, the parties agree to meet and confer as early as possible, and in advance of any search that results in production of documents, to discuss, *inter alia*:

- Pre-search-commencement disclosure of all search methodologies, including terms and semantic synonyms. Semantic synonyms shall mean without limitation code words, terms, phrases or illustrations, acronyms, abbreviations, or non-language alphanumeric associational references to relevant ESI, or information that may lead to relevant ESI. If necessary, based upon the terms disclosed, the parties agree to meet and confer about the content of the search terms and semantic synonyms actually used. The producing party agrees to consider any input or suggestions as to search methodologies and terms made by the requesting party, but the producing party is not required to implement any such input or suggestion. Any disputes may be raised with the Court by either party.
- Search protocol (algorithm selection, etc.).

The parties will continue to meet and confer regarding any search process issues as necessary and appropriate. Nothing in this protocol shall operate to limit a party's obligations under the Federal Rules of Civil Procedure and applicable decisional authority; however, the parties may, and hope, to reach agreements by means of this protocol to reasonably satisfy each parties' discovery requirements under the Federal Rules of Civil Procedure while at the same time reducing the obligations in an appropriate fashion to eliminate unnecessary burdens and costs. This ESI protocol does not address or resolve any other objection to the scope of the parties' respective discovery requests.

This provision does not prevent any party from undertaking searches of its own ESI for its own purposes at any time.

**IV.   FORMAT OF PRODUCTION**

Unless otherwise ordered, documents shall be produced in the following manner:

**1.   Production Media**

The Parties will deliver each production on an external hard drive, CD or DVD. If a delivery is too large to fit on a single DVD, the Parties will produce via an external hard drive.

**2.   Paper Documents**

When the parties produce hard copy (paper) Documents, the paper will be scanned and produced electronically as Group IV single page TIFF images, 300 DPI, named the same as their Bates number (Acrobat PDF scans will comply with this requirement). To the extent an image is illegible or difficult to read, a party propounding the request (Requesting Party) may ask to see the original document. Each TIFF should be endorsed with a unique document identifier (i.e., Bates Label).

Machine generated OCR created from scanned images of hard copy Documents will be provided at a Document level. There will be one text file per Document, named the same as the Beginning Bates number (Document ID) of the Document. For documents without extractable text, OCR shall be provided. The OCR text file for a Document may reside in the same location (file directory) as the images for that Document. The text file associated with any redacted Document will exclude redacted text. If a Document is more than one page, to the extent possible, the unitization of the Document and any attachments or affixed notes should be maintained as it existed when collected by the producing party. The parties may unitize their Documents using either physical unitization (i.e., based on physical binding or organizational elements present with the original paper Documents like staples, clips and binder inserts) or logical unitization (i.e., a manual review of the paper to determine what logically constitutes a document like page numbers or headers).

3. **Unstructured ESI (e.g. e-mail, instant message, Word, Excel, PowerPoint)**

Unstructured ESI also will be produced as Group IV single page TIFF images, 300 DPI, named the same as their Bates number, except as noted below. Each TIFF should be endorsed with a unique document identifier (i.e., Bates Label). Excel files will be produced in native format, named the same as their Beginning Bates number and with their confidentiality designation, with placeholder TIFF images endorsed substantially as follows: "this file produced natively," the applicable Bates number, and any other applicable endorsements. PowerPoint files shall be produced in such a manner that the speaker notes are fully visible on the TIFF file. Native files shall be produced with related searchable text and metadata (to the extent it exists). The parties agree to consider additional production in native format on a Document-by-

Document basis. Each request must be accompanied by an explanation of why a native format copy of each file is necessary.

Extracted text taken from native files will be provided at a Document level. If electronically extractable text is not available for a given document, text generated via OCR will be provided. There will be one text file per Document, named the same as the beginning Bates number (Document ID) of the document. The text file for a Document may reside in the same location (file directory) as the images for that document. The text file associated with any redacted Document will exclude redacted text (i.e., the Producing Party can OCR the redacted image of the unstructured ESI and replace the original extracted text). To the extent a Document has hidden comments, speaker notes, or columns or other embedded data, the parties agree this data should be legible and produced in such a way as to understand its context and not block other text or data.

**4. Metadata**

The following fields will be provided for all Documents (paper and electronic) in the production: Begin Bates, End Bates, Begin/End Attachment, Parent/Child ID, Document Type (Paper, Email, Attachment or E-document), Custodian, Redacted and Confidentiality (see below). The following metadata fields associated with emails, attachments and non-email ESI will be exchanged to the extent that they exist: Subject / Re: Line (Email), File Name (Non-Email), Sent Date (Email), Received Date (Email), Created Date (MS Office files only), Modified Date (All Electronic File Types), Author (All Electronic File Types), Recipient (Email), Copyee (Email), BCC (Email), Importance (Email), File Extension (Attachment or E-document), TextPath, and Nativelink (where applicable). Metadata will be provided in a flat file

(.txt or .dat) using standard Concordance delimiters.  Each line will begin with the fields Beg Bates and End Bates.

5. **Additional Specifications for All Documents (Paper and Unstructured ESI)**

   a. **Load Files**

   For all produced paper and ESI, a standard Opticon image load file indicating document boundaries and location of images will accompany the images. The fields should include Bates ID, CD Name, Path\TIFF Name, DocBreak and Document. When producing a multi-page document, images for the Document should not span multiple directories.

   i. <u>Images in a Single Directory</u>: **Plaintiffs' Position** is that parties responding to a request (Producing Parties) should not include more than 1,000 images in a single directory unless a document is more than 1,000 pages.  **Lumber Liquidator's Position** is that parties responding to a request (Producing Parties) should not include more than 10,000 images in a single directory unless a document is more than 10,000 pages.

   b. **Black & White**

   Generally speaking, Documents can be produced in black and white. However, if an original document contains color and is incomprehensible without color, the party producing the document should, upon request, produce the Document in color, or in native format, to assist the party requesting the document in understanding the document. The parties expect that there will be few instances in which such requests will be necessary and such requests should not unreasonably be denied by the Producing Party.  Production of color images will be in JPEG format.

9

### c. Bates Labeling

For all Documents produced in TIFF format, the Producing Party will electronically "burn" a legible, unique Bates number onto each page at a location that does not obliterate, conceal or interfere with any information from the source document. For Documents produced in native format, the Bates number shall be included in the file name of the produced document. Each Producing Party should use unique Bates Labels to identify its images and documents. A Bates Label should begin with at least three alphabetical characters and followed by at least seven numbers (e.g., ABC0000001 or ACME00000023 or JUPITER0000004).

### d. Redactions

If the Producing Party is redacting information from a page, the Producing Party should electronically "burn" the word "Redacted" onto the page at or reasonably near the location of the redaction(s). If the Producing Party redacts a Document, it may withhold from the Document's Load File, any metadata that may reveal privileged information (e.g. the Subject line of a privileged e-mail). The reason for privilege redaction(s) of each privilege-logged record must be disclosed in the appropriate privilege log.

### e. TIFF Filename Convention

The file name for each TIFF image should correspond to the Bates Label for that Image (e.g. ABC0000009 would be ABC0000009.tif).

### f. Attachments

To the extent any Document has a relationship to another Document (such as an attachment to e-mail, exhibit to a memo, embedded file, or an appendix to a report), that relationship should be preserved and produced using the Begin Attach and End Attach fields in

the Load File discussed above. All attachments to responsive files must be produced unless they are withheld based on a claim of privilege and noted on the producing party's privilege log.

### g. Embedded Data

Objects that are embedded in Documents shall be produced in such a way that they are visible on the TIFF file. Parties will not refuse reasonable requests by an opposing party to produce a specified embedded object as a separate file, provided that the requesting party specifies why production as a separate file is necessary.

### h. Organization of Hard Copy Production

The producing Party should scan and produce folders, redwells, binder-covers and other organizational structure. Such materials should be produced as independent Documents and be produced before the Documents that were contained in these elements to the extent reasonably accomplishable by the above-addressed unitization. (e.g. the file folder should have a Bates Label immediately before the Documents contained in the file folder). The Producing Party will provide the name of the custodian who had possession of the Document when it was collected to the extent that it can be reasonably determined at the time of collection. A custodian can include an employee or person's name, a shared space on an electronic data store (e.g. departmental share), or an archive storage.

### i. Confidentiality

If the Producing Party is producing a Document subject to a claim that it is protected from disclosure under the Confidentiality Agreement and Protective Order ("Confidentiality Agreement") contemplated by the Discovery Plan to which this ESI Protocol is an exhibit, the Producing Party shall make the designation described in that Confidentiality Agreement.

6. **Structured Data (e.g., databases)**

If data from structured data systems (e.g., databases) is responsive to particular requests and will otherwise be produced, the Parties agree that the responding party will notify the requesting party of its intended production format prior to the actual production and the Parties will discuss in good faith the most reasonable production format for the particular information. Where possible, relevant and responsive information from databases will be either produced in standard (a/k/a canned) reports or as pipe-delimited ASCII format with the first row including data field headings/names.

7. **Global De-Duplication**

The parties will use global de-duplication across custodians to remove exact duplicates (based on MD5 or SHA-1 hash values at the family level) so long as the suppression of documents from review tracks where the duplicates were residing so that it can be produced if warranted. Loose electronic files will not be compared to e-mail attachments for deduplication purposes. The parties will not electronically deduplicate hard copy documents and will not treat hard copy files containing handwritten notes as duplicative of any other document.

8. **Abilities of Document Vendors**

Should a party's document vendors be unable to comply with this protocol in any material respect or without undue burden, the parties shall meet and confer on the issue.

V. **RETURN OF INADVERTENTLY, UNINTENTIONALLY, OR MISTAKENLY PRODUCED PRIVILEGED DOCUMENTS**

The parties agree that if information subject to a claim of attorney-client privilege or work product immunity or any other privilege or immunity is inadvertently, unintentionally, or mistakenly produced in this litigation, such production shall in no way prejudice or otherwise

constitute a waiver of, or estoppel as to, any claim of privilege or work-product immunity for the document or any other document covering the same or a similar subject matter under applicable law, including Federal Rule of Evidence 502. If a Producing Party has inadvertently, unintentionally or mistakenly produced Information subject to a claim of immunity or privilege, and if the Producing Party makes a written request for the return of such Information, the Information for which a claim of inadvertent, unintentional, or mistaken production is made (including any analyses, memoranda, derivative works, or notes which were generated based upon such Information), as well as all copies, shall be either sequestered, destroyed, or returned within five (5) business days regardless of whether the Receiving Party disputes the claim of privilege. The Producing Party will provide sufficient information to the Receiving Party regarding the asserted privilege(s), in the form of a privilege log. If the Receiving Party disputes the Producing Party's assertion of privilege, the Receiving Party may move the Court for an order compelling production of the material but such motion shall not assert the fact or circumstance of an inadvertent, unintentional, or mistaken production as grounds for entering such an order. Subject to the Court's direction, resolution of the issue may include the Court's review of the potentially privileged information in camera.

Notwithstanding this agreement, no party will be prevented from seeking any further protection or relief provided by any statute, law, or Rules or Orders of a Court. Likewise, no party will be prevented from moving the Court for an order compelling the production of documents for which a party asserts the privilege has been waived, is inapplicable or no longer applies in each case solely due to a reason other than an inadvertent, unintentional, or mistaken production. Pursuant to Fed. R. Civ. P. 26 (f)(3)(D), and in a manner giving effect to Fed. R.

Evid. 502 (d)-(f), the parties request that the protocol for return of inadvertently, unintentionally or mistakenly produced privileged documents, stated herein, be incorporated into an order of the Court.

## VI. DOCUMENT REQUESTS FROM PRIOR LITIGATION

The parties will meet and confer to discuss the re-production of documents produced in prior litigation. The producing party will be prepared to discuss what metadata is available and the volume of re-produced documents.

## VII. PRIVILEGE LOG SPECIFICATIONS

The parties agree that privilege logs will be produced as an Excel spreadsheet. Documents withheld from production that a party believes are covered by an attorney-client privilege and/or work product protection, which do not fall into categories specifically excluded by court order or by agreement of the parties, should be logged on a privilege log on a document-by- document basis. The following information should be provided (as applicable) in the privilege log for each document: (1) Document identification number; (2) document type; (3) attachments; (4) date; (5) author; (6) recipient(s); (7) copyee(s); (8) privilege or protection claimed; and (9) description of the document including information sufficient to establish the elements of each asserted privilege. In order for the description of the document to be sufficient so that the requesting party can assess the nature and claim of the privilege and privilege disputes can be focused on particular documents so that the parties and the Court are not wasting time and effort on unnecessary documents, the description needs to be detailed enough so that the issue in the case or matter can be identified. Parties may exclude from their privilege logs, all documents created or modified after December 3, 2013, and need not log any communications occurring

solely between any employee of the producing party and its outside counsel, or in-house counsel acting solely in a legal capacity.

## VIII. OBJECTIONS TO ESI PRODUCTION

A. For files produced as Black and White Group IV TIFF or Color JPG images, documents that present imaging or form production problems shall be promptly identified and disclosed to the requesting party; the producing party will take reasonable steps to resolve the problem. If it is not resolved within five (5) business days, the parties shall then meet and confer to attempt to resolve the problems.

B. If either party objects to producing the requested ESI on the grounds that such information is not reasonably accessible because of undue burden or cost, or because production in the requested format is asserted to be not reasonably accessible because of undue burden or cost, the party, at or before the time the production is due under the Federal Rules of Civil Procedure or the Case Management Order, shall describe the nature of the objection with reasonable particularity and indicate whether the producing party is willing to offer an alternative. The parties will promptly meet and confer in an attempt to resolve the objections if necessary.

C. If in-house or outside counsel for the producing party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business or not occurring in accordance with the party's document retention policies, the producing party shall explain where and when the ESI was last retrievable in its original format, and disclose the circumstances surrounding the change in status of that ESI, and whether any backup or copy of such original ESI exists, together with the location and the custodian thereof.